IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL CASE NO.<br>1:14-CR-00229-TCB-RGV |
| JOSHUA TAYLOR | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Joshua Taylor ("Taylor") is charged with one count of conspiring to commit copyright infringement, in violation of 18 U.S.C. § 371. [Doc. 1].[1] After the case was scheduled for trial and Taylor had informed the Court that he intended to enter a guilty plea, Taylor's counsel cancelled the change of plea hearing and subsequently filed a "Notice Pursuant to Fed. R. Crim. P. 12.2 of Intent to Offer Expert Evidence of a Mental Condition." [Doc. 100 (all caps omitted)]. The United States has filed the "Government's Motion to Preclude Defendant from Offering Expert Testimony Regarding any Mental Disease or Defect or Other Mental Condition," [Doc. 102], which Taylor opposes, [Doc. 107].[2] The government's

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF, except that citations to the evidentiary hearing transcript are cited according to the transcript page number.

[2] The government has filed a reply in support of its motion. See [Doc. 111].

motion has been referred to the undersigned Magistrate Judge, see [Doc. 101], and for the reasons that follow, it is **RECOMMENDED** that the government's motion, [Doc. 102], be **GRANTED**.

## I.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

The indictment in this case was filed on June 17, 2014, [Doc. 1], and Taylor was arraigned in this district on August 15, 2014, [Doc. 34], following his arrest and release on bond in the Western District of Michigan, [Docs. 15 & 20], where he resides.  Attorney John Lovell ("Lovell") was appointed to represent Taylor on August 19, 2014, [Doc. 36], and he subsequently sought and obtained an extension of time until December 2, 2014, to file pretrial motions, [Docs. 43 & 46].  Taylor was granted two additional extensions of time to file pretrial motions, [Docs. 51 & 53], with the final deadline extended to January 7, 2015.  Taylor did not file any pretrial motions, and after his co-defendant's pretrial motion was addressed, see [Doc. 71], the case was certified as ready for trial on June 12, 2015, [Docket entry dated 06/12/2015].  On July 7, 2015, upon the joint motion of the parties, the Court scheduled the trial of the case for January 25, 2016.  [Doc. 77].[3]

---

[3] In granting the motion to set the trial for January 25, 2016, the Court noted that there were various scheduling complications involving both the parties and the lawyers in this case and in a related case that was set for trial on May 23, 2016. [Doc. 77 at 1].

The parties prepared to proceed toward trial, filing their proposed voir dire questions on January 4 and 6, 2016. [Docs. 90, 91 & 92]. After co-defendant Gary Edwin Sharp, II entered a guilty plea on January 13, 2016, [Doc. 93], Taylor's pretrial conference was scheduled for January 21, 2016, [Docket entry dated 01/19/2016]. However, Taylor subsequently notified the Court that he intended to enter a guilty plea, and a change of plea hearing was scheduled for January 29, 2016. See [Doc. 96 at 1]. Because he is indigent and could not afford the cost of travel, Taylor filed a motion for transportation expenses to travel from Grand Rapids, Michigan, to Atlanta, Georgia, to attend his change of plea hearing, [Doc. 96], and the Court granted his motion, directing the U.S. Marshal to arrange airline transportation for Taylor to attend both his change of plea hearing and sentencing hearing, [Doc. 97]. The change of plea hearing was rescheduled for February 12, 2016. [Doc. 98].

Taylor met with his attorney, Lovell, in person for the first time on February 11, 2016, the evening prior to his scheduled plea. [Doc. 107 at 2]. However, prior to meeting Taylor in person, Lovell "was aware of a possible mental health issue." [Id.]. Specifically, Lovell spoke with Dr. Julie Davis on or about February 8, 2016,[4] and she informed him that she believed that Taylor "did not possess the requisite

---

[4] As the government points out, [Doc. 111 at 2 n.1], Taylor's response to the government's motion actually states that Lovell spoke with Dr. Davis on or about February 8, **2015**, [Doc. 107 at 2]. The Court presumes, as does the government, [Doc. 111 at 2 n.1], that this was simply a typographical error.

intent to commit the crime charged." [Id.]. Lovell requested that Dr. Davis provide him a written opinion regarding her findings, and she emailed a letter to him on the morning of the scheduled plea, February 12, 2016. [Id.].

Dr. Davis wrote that she is Taylor's treating psychologist and has been seeing him since June 2015. [Doc. 109 at 3]. Based on historical information provided by Taylor and his long-term partner, as well as the results of assessments of Taylor that she conducted, Dr. Davis concluded that Taylor "did not understand that he was committing a felonious act," and "did not have the capacity to form cognitive intent to commit such felonious act." [Id. at 4]. After receiving the letter from Dr. Davis and meeting with Taylor to discuss it and related matters, Lovell "concluded that he could not, in good faith, proceed with the plea." [Doc. 107 at 2]. On the morning of the scheduled guilty plea, Lovell notified the Court and counsel for the government that Taylor could not proceed with the guilty plea. [Doc. 102 at 2; Doc. 107 at 2].

On February 18, 2016, Taylor filed a "Notice Pursuant to Fed. R. Crim. P. 12.2 of Intent to Offer Expert Evidence of a Mental Condition." [Doc. 100 (all caps omitted)]. The notice states that Taylor "intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt." [Id. at 1 (alteration in original) (internal marks

4

omitted)]. The notice further states that Taylor "intends to offer the testimony of numerous medical experts who have treated [him] since childhood." [Id.].

In response to Taylor's notice, the government filed the pending "Motion to Preclude Defendant from Offering Expert Testimony Regarding any Mental Disease or Defect or Other Mental Condition," [Doc. 102], arguing that Taylor's notice is untimely under Rule 12.2 of the Federal Rules of Criminal Procedure, and the proposed expert testimony regarding any mental disease or defect, or any other mental condition, bearing on the issue of guilt should be excluded. Taylor opposes the government's motion, arguing that there is good cause to excuse the delay in providing the notice. [Doc. 107]. For the reasons that follow, the Court finds that Taylor has not shown good cause for the untimely notice, and the government's motion to exclude the expert testimony is due to be granted.

## II.  DISCUSSION

Rule 12.2 provides that "[i]f a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt," he must file notice of his intent "within the time provided for filing a pretrial motion or at any later time the court sets." Fed. R. Crim. P. 12.2(b). If a defendant fails to give notice as required by Rule 12.2(b), the Court may exclude expert evidence. Fed. R. Crim. P. 12.2(d)(1)(A). The Court "has

wide discretion to excuse [a defendant's] failure to grant timely notice of [his] expert's testimony [under Rule 12.2(b)], but also has broad discretion to exclude such testimony." United States v. McLernon, 746 F.2d 1098, 1115 (6th Cir. 1984) (citation omitted). Indeed, "courts interpreting Fed.R.Crim.P. 12.2 have held that a district court's decision to exclude psychiatric testimony bearing upon the mental condition of the defendant is reversible only if the court abused its discretion in excluding this evidence." United States v. Buchbinder, 796 F.2d 910, 914 (7th Cir. 1986) (citations omitted).

Taylor does not dispute that his notice is untimely, nor could he credibly do so since the notice was filed over one year after the extended deadline for filing pretrial motions had expired and even weeks beyond the date his trial had been scheduled to begin. However, Taylor contends that he had good cause for not filing his notice earlier, [Doc. 107 at 3], and Rule 12.2 specifically provides that "[t]he court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders," Fed. R. Crim. P. 12.2(a). Good cause "consists not only of explanation for the belatedness of the party's action, but also of a showing of some merit in the position belatedly to be advanced." United States v. Duggan, 743 F.2d 59, 80 (2d Cir. 1984) (citation omitted) (analyzing the identical "good cause" provision of Rule 12.2(a)), superseded by

statute on other grounds, United States v. Abu-Jihaad, 630 F.3d 102, 119-20 (2d Cir. 2010); see also United States v. Weaver, 882 F.2d 1128, 1136 (7th Cir. 1989) (citations omitted).  The Court is not persuaded that Taylor has shown good cause for the seriously tardy notice he filed in this case.

Taylor first argues that he "was at a distinct disadvantage in providing notice as, due to the circumstances of his representation, [he] was never afforded an in-person meeting with counsel." [Doc. 107 at 3].  More specifically, Taylor asserts that since he resides in Michigan and could not afford to travel to Atlanta because he is indigent, he communicated with his attorney, Lovell, exclusively via email and phone until they met in person the day before he was scheduled to enter a guilty plea.  [Doc. 107 at 4].  Taylor contends that the "nuances of [his] mental condition were not apparent to counsel via remote discourse." [Id.].  However, this argument fails to establish good cause because Taylor could have requested travel funds based on his indigent status.[5]  In fact, Taylor did just that in order to attend his scheduled guilty plea.  See [Doc. 96].

---

[5] The government correctly points out, [Doc. 111 at 1-2], that in a related case, the Court approved travel expenses for counsel to visit his indigent client in another state because that defendant could not physically travel to Atlanta, see United States v. Buckley, Criminal Action No. 1:14-cr-00227-TCB-RGV, at [Docs. 39 & 43] (N.D. Ga. Aug. 29 & Sept. 4, 2014).

More importantly, the failure to have a face-to-face meeting with Lovell did not prevent Taylor from providing timely notice because it was counsel's communication with Dr. Davis, not Taylor, that alerted him to a potential mental health issue. Taylor began treatment with Dr. Davis in June 2015, but it was not until "the week when the plea was to be entered, counsel spoke with Dr. Davis," and she "informed counsel of her concerns regarding [] Taylor's culpability for the charged crimes." [Doc. 107 at 4]. Taylor has not offered any explanation for the delay in communication between Lovell and Dr. Davis, with whom he had been in treatment for over six months before he filed his notice. Moreover, Dr. Davis' letter and the notice Taylor filed suggest he has had a long term history of mental health treatment as he "intends to offer the testimony of numerous medical experts who have treated [him] since childhood." [Doc. 100 at 1]. Again, Taylor has not offered any reason, much less shown good cause, for counsel not exploring his mental health history at some earlier point in time when notice could have been provided in a more timely fashion.

Taylor next contends that "it is contrary to good policy and the pursuit of justice to preclude [him] from offering this evidence for lack of notice as [he] had little to do with the timeliness of offering this notice." [Doc. 107 at 3]. Taylor argues that he should not be disadvantaged for counsel "not more vigorously inquiring

regarding and pursuing evidence of a mental disease or defect." [Id. at 5]. However, as the government points out, a defendant generally has "little to do" with whether a notice is timely filed under Rule 12.2, [Doc. 111 at 2 (internal marks omitted)], yet the rule still requires a showing of good cause to excuse a tardy filing, and there are sound policy reasons for requiring timely notice. Indeed, the Eleventh Circuit has explained:

> Rule 12.2 serves both efficiency and fairness purposes in criminal trials. It implicates fairness because it alerts the Government to a defendant's intention to introduce expert mental-health evidence, thereby giving the Government a chance to prepare its own mental-health evidence in rebuttal. This, in turn, implicates efficiency in the courts because the preparation of mental-health evidence frequently requires the use of expensive and time-consuming experts.

LeCroy v. United States, 739 F.3d 1297, 1305 n.6 (11th Cir. 2014). Were the Court to accept Taylor's argument that untimely notice should be excused and a continuance granted whenever counsel is to blame for the tardy notice, it would essentially eviscerate the rule's requirement of showing good cause and "the Court would be saying to all criminal defense lawyers that a continuance can be had simply by waiting until the last minute to assert a Rule 12.2(b) defense." United States v. Edwards, 90 F.R.D. 391, 397-98 (E.D. Va. 1981). Moreover, counsel does not necessarily bear the entire blame for the tardiness in this case as Taylor had been undergoing treatment with Dr. Davis since June 2015, and he made her aware of the

9

criminal charges when he began treatment, see [Doc. 109 at 3], yet neither he nor she apparently communicated this information to Lovell until February 2016. See United States v. Parker, 403 F. App'x 24, 27-28 (6th Cir. 2010) (unpublished). "[I]t is not an abuse of discretion to deny a continuance where the defense counsel's claimed lack of adequate preparation time was based on late notice of evidence obtained from the defendant or the defendant's unwillingness to help prepare the defense. Id. at 27 (citing Broom v. Mitchell, 441 F.3d 392, 414–15 (6th Cir. 2006)).

Taylor attempts to distinguish the cases cited by the government by arguing that "the untimeliness of the notice in this case does not fall within a period that other courts have exercised discretion in precluding a defense." [Doc. 107 at 6]. Taylor notes that there was a two-week proximity between notice and trial in the cases cited by the government, [id. at 5 (citing Weaver, 882 F.2d at 1135; Buchbinder, 796 F.2d at 915; Duggan, 743 F.2d at 80)], and he asserts that the government "did not cite a case where the notice was given at a time when the case was not scheduled for trial," [id.]. Taylor argues that the "Court should not exclude evidence under the unique circumstances presented here." [Id. at 6].

Taylor's argument fails to acknowledge that the truly "unique circumstances presented here" are that he filed the notice **after** the date of his scheduled trial, which had been cancelled only because Taylor informed the Court that he intended

to enter a guilty plea, and over **one year after** the deadline for filing pretrial motions, which had been extended three times. Thus, the "unique circumstances presented here" actually strengthen the government's position that the expert testimony should be excluded based on the untimely notice, for which good cause has not been shown. See Edwards, 90 F.R.D. at 397-98. Indeed, if exclusion is not an appropriate exercise of the Court's discretion under these circumstances, then it is questionable whether the Court could ever exercise its discretion to exclude expert testimony for a violation of Rule 12.2.

Finally, good cause includes showing "that there is some merit to the defense which will be supported by the expert testimony," Weaver, 882 F.2d at 1136 (citations omitted), but the details of Taylor's proffered defense are thin, leaving little to no basis for finding that it has potential merit. The notice Taylor tardily filed essentially just quotes the language of Rule 12.2, see [Doc. 100], and the letter from Dr. Davis adds little more than her conclusions that Taylor "did not understand that he was committing a felonious act," and "did not have the capacity to form cognitive intent to commit such felonious act," [Doc. 109 at 4]. Taylor's response to the government's motion devotes a single paragraph to the merits of the defense, simply quoting Dr. Davis' opinions and indicating that "counsel has requested the records of ten (10) doctors and other entities who have provided mental health treatment to

11

[] Taylor since [he] was in grade school." [Doc. 107 at 6]. The government contends that neither of the opinions from Dr. Davis that Taylor has proffered would be admissible because the first, that he "did not understand that he was committing a felonious act," is an ultimate opinion on whether he had the requisite intent and is barred by Fed. R. Evid. 704(b), and the second, that Taylor "did not have the capacity to form cognitive intent," is barred by Eleventh Circuit precedent. [Doc. 111 at 3 (citations and internal marks omitted)]; see also [id. (quoting United States v. Westcott, 83 F.3d 1354, 1358 (11th Cir. 1996)) ("'Evidence that a defendant lacks the capacity to form *mens rea* is to be distinguished from evidence that the defendant actually lacked *mens rea*. While the two may be logically related, only the latter is admissible to negate the *mens rea* element of the offense.'")].

The government's arguments are strong on the record presently before the Court, but it acknowledges that Taylor "has not yet provided the specific information he seeks to offer pursuant to Rule 16," [Doc. 111 at 3], which hinders a full and complete assessment of the admissibility of the expert testimony. Nevertheless, as the government has argued in its motion, [Doc. 102 at 3-4], which Taylor does not contest, see [Doc. 107], he bears the burden of demonstrating that the belatedly-noticed testimony has merit, and despite the Court's admonition regarding this burden during a conference call with counsel setting the briefing

schedule, [Doc. 103], Taylor has not met his burden of showing that the proffered expert testimony has merit.

In United States v. Cameron, 907 F.2d 1051, 1067 (11th Cir. 1990), "the Eleventh Circuit addressed the admissibility of psychiatric evidence and cautioned district courts to admit only psychiatric evidence which 'focuses on the defendant's specific state of mind at the time of the charged offense.'" United States v. Smith, Criminal No. 1:09-CR-158-JTC-GGB-1, 2009 WL 5174231, at *2 (S.D. Ala. Dec. 21, 2009) (citation omitted) (quoting Cameron, 907 F.2d at 1067). Thus, "psychiatric evidence is properly admitted to negate specific intent only when the evidence focuses on the defendant's specific state of mind at the time the offense was committed." Id. at *5 (citations omitted). The problem with the proffered opinions of Dr. Davis is that she was not treating Taylor during the relevant time period of the offense conduct. In United States v. Puerto, 392 F. App'x 692, 705-06 (11th Cir. 2010) (unpublished), the defendant sought to introduce the testimony of two physicians to challenge whether he had the requisite mens rea to commit the charged crimes, but these physicians had not examined the defendant during the time of the charged acts, and the Eleventh Circuit ruled that the district court properly excluded their testimony, concluding that "because they did not know what his mental state was during the relevant time, they also could not opine with

any degree of medical certainty with respect to his mens rea during the relevant time period." Id.; see also Smith, 2009 WL 5174231, at *2 (excluding expert testimony because "Dr. Bennett's opinions do not focus on Defendant's state of mind at the time the offense was committed; rather, his opinions consist of vague statements about symptoms of illnesses Dr. Bennett believes Defendant may have had when he committed the acts"). In view of Eleventh Circuit precedent regarding the admissibility of expert testimony to challenge mens rea, Taylor has not demonstrated "that there is some merit to the defense which will be supported by the expert testimony," Weaver, 882 F.2d at 1136 (citations omitted), and, therefore, he has not shown good cause to excuse the untimely filing of his notice under Rule 12.2. When, as here, "timely notice has not been given in accordance with the Rule, and where there has been no showing of cause for late filing of the notice or for a continuance, the Court is fully within the bounds of its discretion, and of the Rule, in excluding the testimony of defendant's expert witness." Edwards, 90 F.R.D. at 397-98.

## III.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the "Government's Motion to Preclude Defendant from Offering Expert Testimony Regarding any Mental Disease or Defect or Other Mental Condition," [Doc. 102], be **GRANTED**.

14

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED AND RECOMMENDED**, this 6th day of April, 2016.

_____
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE